**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

JENEIL H. MAGLOIRE,

                    Appellant,

          v.

GENERAL SERVICES
     ADMINISTRATION,
                    Agency.

DOCKET NUMBER
AT-0752-19-0778-I-1

DATE: August 16, 2023

## THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Jennifer Robinson, Denver, Colorado, for the appellant.

Carisa LeClair and Jaron E. Chriss, Atlanta, Georgia, for the agency.

### BEFORE

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member

### FINAL ORDER

¶1     The agency has filed a petition for review of the initial decision, which sustained the agency's charge of absence without leave (AWOL) and mitigated the appellant's removal to a 30-day suspension. Generally, we grant petitions such as this one only in the following circumstances: the initial decision contains

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed.  Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review.  Therefore, we DENY the petition for review and AFFIRM the initial decision, which is now the Board's final decision.  5 C.F.R. § 1201.113(b).

## BACKGROUND

Effective September 30, 2018, the agency removed the appellant from her position as a GS-14 Realty Officer in the agency's Real Property Utilization and Disposal Division on a single charge of AWOL.  Initial Appeal File (IAF), Tab 4 at 4, 5-9.  The charge was supported by 41 specifications alleging that the appellant had failed to report to work and did not contact her supervisor to request approval for her absences between May 14 and July 16, 2018.  *Id.* at 5-9, 39-46.  The appellant filed a formal equal employment opportunity (EEO) complaint in which she claimed that her removal resulted from disability discrimination based on her medical conditions of cognitive issues, memory loss, and anxiety disorder.  IAF, Tab 8 at 5-7.  On August 16, 2019, the agency issued its Final Agency Decision on the appellant's EEO complaint, finding that the agency did not subject the appellant to discrimination on the basis of her disability.  *Id*. at 8-21.  The appellant timely filed this appeal on September 14, 2019.  IAF, Tab 1.

¶3      After holding a hearing, the administrative judge determined that, on the earliest date for which the agency charged the appellant as AWOL, she had exhausted her sick and annual leave. IAF, Tab 43, Initial Decision (ID) at 12. However, he determined that, during the time that the agency alleged she was AWOL, the appellant had 35 hours of leave available to her under the Family and Medical Leave Act (FMLA).[2] ID at 12-13. Presuming that the appellant had a FMLA-qualifying reason for her absence for those 35 hours, the administrative judge found that the agency established that the appellant would not have had FMLA leave available for her use on at least 36 of the 41 days that the agency alleged she was AWOL. ID at 13. The administrative judge also determined the agency established that, despite the medical conditions that the appellant experienced during the time the agency found that she was AWOL, its denial of leave without pay (LWOP) was reasonable. ID at 17. Because the agency established that the appellant was absent from work during each day that the agency alleged she was AWOL, and that it had properly denied her requests for LWOP on 36 of those days, the administrative judge sustained the AWOL charge. ID at 17-18.

¶4      The administrative judge found that the appellant failed to prove that the agency denied her due process by considering ex parte information. ID at 18-22. He also found that the appellant failed to establish that the agency discriminated against her on the basis of her disability. ID at 25-26. The administrative judge determined that the agency established a nexus between the appellant's AWOL

---

[2] Subject to meeting certain certification requirements, the FMLA entitles an employee to a total of 12 administrative workweeks of leave during any 12-month period for one of the FMLA-qualifying reasons, to include caring for a parent who has a serious health condition or because of a serious health condition that makes the employee unable to perform the functions of the employee's position. 5 U.S.C. § 6382(a)(1). The administrative judge determined that, as of April 23, 2018, the appellant had used 445 of her 480 hours of FMLA-qualifying leave for the year ending January 4, 2019, leaving her with 35 hours of remaining entitlement to leave under the FMLA. ID at 12-13 & n.2; IAF, Tab 21 at 19-20.

and the efficiency of the service. ID at 10-11. Nevertheless, he also determined that the medical evidence the appellant submitted after her removal established that she had made significant strides during her treatment and had sufficiently recovered with essentially a clean bill of health regarding her cognitive functions. ID at 29. Given that recovery, which he observed had happened within a month of her removal, and her long, successful service history, the administrative judge found that the penalty of removal exceeded the tolerable bounds of reasonableness, and he mitigated the penalty to what he determined was the maximum reasonable penalty, a 30-day suspension. *Id.*

¶5     In its petition for review, the agency argues that, in mitigating the penalty, the administrative judge improperly substituted his judgment for that of the agency. Petition for Review (PFR) File, Tab 1 at 4, 9-10. The agency contends that the deciding official carefully considered each of the *Douglas* factors and determined that a lesser penalty was not justified, despite the mitigating factors of the appellant's 28 years of Federal service and work performance. *Id.* at 10-11. It argues that the administrative judge incorrectly used post-removal evidence to conclude that the appellant's medical condition could be remedied or controlled and contends that the deciding official reasonably concluded otherwise in determining that the appellant's potential for rehabilitation was poor. *Id.* at 14-15. The agency also argues that the administrative judge gave the appellant's post-removal evidence more weight than was warranted under the circumstances, contending that the post-removal medical evidence had nothing to do with the events that led to her removal. *Id.* at 15-16.

¶6     The appellant filed a motion to file an additional pleading, i.e., a motion to dismiss the agency's petition for review as moot, in which she argued that, because the agency had exceeded the interim relief that was ordered by the administrative judge, it had effectively removed the action from controversy. PFR File, Tab 7 at 6-7, Tab 8 at 4-5. The appellant also contended that, in the alternative, the agency's petition for review should be dismissed because the

agency had failed to comply with the administrative judge's interim relief order by transferring her to the position of Supervisory Realty Specialist rather than appointing her to the position of Realty Officer. PFR File, Tab 7 at 8.[3] The appellant has also filed a response to the agency's petition for review. PFR File, Tab 9. The agency has filed a response to the appellant's motion to dismiss and a reply to the appellant's response to its petition for review. PFR File, Tabs 13-14.

## DISCUSSION OF ARGUMENTS ON REVIEW

The administrative judge correctly found that the agency proved the AWOL charge and established the nexus requirement.

¶7    As explained above, the administrative judge found that the agency established the AWOL charge concerning 36 of the 41 days that it alleged the appellant was AWOL. ID at 13; *Savage v. Department of the Army*, 122 M.S.P.R.

---

[3] As an initial matter, we grant the appellant's motion to file an additional pleading. However, we deny her motion to dismiss the appeal as moot, or, alternatively, to dismiss the agency's petition for review for failure to demonstrate compliance with the interim relief order. Even if the agency exceeded the administrative judge's interim relief order, the agency's petition for review is not moot. *See Campbell v. U.S. Postal Service*, 95 M.S.P.R. 185, ¶ 6 (2003) (stating that the Board will not automatically dismiss an agency's petition for review as moot when the agency has in good faith and inadvertently exceeded the requirements of an interim relief order).

Regarding the appellant's argument that the agency did not comply with the administrative judge's interim relief order, the agency alleged that it reinstated the appellant to the Realty Officer position, and then reassigned her to the position of Supervisory Realty Specialist with the same duty and pay grade, which it mistakenly considered to also be a Realty Officer position. PFR File, Tab 13 at 6-7. It also argued that the Supervisory Realty Specialist position was within the appellant's experience, and served the agency's needs. *Id.* at 8. The agency asserted that the appellant's original position had been slated to be abolished, and that, because it had a strong and overriding interest in the appellant's reassignment, it had therefore made an implicit undue disruption determination. *Id.* at 8-9; *see Purzycki v. General Services Administration*, 81 M.S.P.R. 188, ¶ 9 (1999) (finding that an agency should be found in compliance with an interim relief order if it can show that it had a strong overriding interest or compelling reason for assigning duties other than those assigned prior to an appellant's separation and that, if the agency can make such a showing, the Board will find that it has made an implicit undue disruption determination). The agency also argues that, prior to her removal, the appellant specifically requested to be reassigned to a different division. *Id.* Accordingly, we find the appellant's argument unavailing.

612, ¶ 28 n.5 (2015) (explaining that, to prove an AWOL charge, an agency must demonstrate that the employee was absent without authorization and, if the employee requested leave, that the request was properly denied), *overruled in part by Pridgen v. Office of Management and Budget*, 2022 MSPB 31, ¶¶ 23-25. The administrative judge declined to sustain 5 days of AWOL due to the appellant's remaining entitlement to 35 hours of leave under the FMLA. *See Ellshoff v. Department of the Interior*; 76 M.S.P.R. 54, 73 (1997) (finding that, when the facts related to a leave-related charge implicate the FMLA, the Board will consider and apply the FMLA without shifting the burden of proof to the appellant). Because he sustained 36 of the specifications, he sustained the charge. ID at 13; *Burroughs v. Department of the Army*, 918 F.2d 170, 172 (Fed. Cir. 1990) (finding that, when more than one event or factual specification supports a single charge, proof of one or more, but not all, of the supporting specifications is sufficient to sustain the charge). He also found that the agency established a nexus between the charged misconduct and the efficiency of the service. ID at 10-11. The parties do not challenge these findings on review, and we discern no reason to disturb them.

## The agency failed to show that the administrative judge erred in mitigating the penalty.

¶8        As to the penalty, the administrative judge correctly observed that, when all of the agency's charges are sustained, but, like here, some of the underlying specifications are not sustained, the agency's penalty determination is entitled to deference and should be reviewed only to determine whether it is within the parameters of reasonableness. ID at 26; *Payne v. U.S. Postal Service*, 72 M.S.P.R. 646, 650 (1996). In reviewing the agency's choice of penalty to determine whether it was within the parameters of reasonableness, the administrative judge recognized the seriousness of the appellant's misconduct and the fact that, as a supervisor, the agency was entitled to hold her to a higher standard of conduct. ID at 27; *see Bowman v. Small Business Administration*,

122 M.S.P.R. 217, ¶ 12 (2015) (observing that the Board has held that AWOL is a serious offense that warrants a severe penalty and that agencies may hold supervisors to a higher standard of conduct). The administrative judge also found that the penalty was consistent with the agency's table of penalties, which authorizes a penalty of removal for a first offense of AWOL involving an absence that exceeds 10 days without permission and without adequate justification. ID at 27; IAF, Tab 5 at 22. Nevertheless, he determined that the appellant's post-removal medical evidence demonstrated that her medical conditions had played a role in the absences at issue and that her cognitive functions had significantly improved; thus, he determined that, under the circumstances, the penalty of removal exceeded the tolerable limits of reasonableness. ID at 29; *see Bowman*, 122 M.S.P.R. 217, ¶¶ 12-15 (finding a 30-day suspension was the maximum reasonable penalty for a supervisor with over 20 years of service and a prior leave-related disciplinary action whose medical condition played a role in the absences that supported the agency's AWOL charge).

> *The administrative judge correctly reviewed the reasonableness of the penalty based on the appellant's post-removal medical evidence.*

¶9 The agency generally argues on review that the administrative judge erroneously substituted his judgment for that of the agency. PFR File, Tab 1 at 4, 9-10. However, the administrative judge correctly observed that he must analyze whether the penalty was within the tolerable limits of reasonableness based on the new evidence the appellant submitted to the Board, and not based on the facts and circumstances known to the deciding official at the time he made his decision to remove the appellant. ID at 28; *see Norris v. Securities and Exchange Commission*, 675 F.3d 1349, 1357 (Fed. Cir 2012) (finding that an arbitrator erred by stating that the issue before him was whether the penalty was within the tolerable limits of reasonableness based upon the facts and circumstances known to the deciding official at the time).

¶10 The administrative judge determined that the deciding official's penalty analysis may have been appropriate in finding that the appellant's medical condition, and the extent that she would recover and return to full function, was not a substantial mitigating factor at the time of his decision. ID at 29; *Mingledough v. Department of Veterans Affairs*, 88 M.S.P.R. 452, ¶ 12 (2001) (finding that a medical condition was not a significant mitigating factor absent evidence that the impairment can be remedied or controlled). He noted that, at the time the agency charged the appellant with AWOL, she had exhausted all of her leave, and it appeared to the agency that she may have been abusing leave because, even though she insisted that she could not return to work, i.e., that her absence was open-ended, there was no clear medical evidence suggesting she was incapacitated to the point that she could not return to work. ID at 12 n.2, 16-17; *see Patterson v. Department of the Air Force*, 74 M.S.P.R. 648, 652 (1997) (finding that, when an employee has exhausted all available leave, an agency may deny LWOP and place the employee on AWOL when there is no foreseeable end to the employee's absence and the absence is a burden to the agency).

¶11 Thus, the administrative judge did not mitigate the penalty based on any alleged inadequacies in the deciding official's penalty analysis. As discussed below, the administrative judge instead found that the appellant's post-removal medical documentation and her testimony before him indicated that her absences were related to her underlying mental conditions, and that she had sufficiently recovered within a month of her removal to return to work. ID at 27, 29.

> *The administrative judge correctly found that the appellant's post-removal medical evidence provides the requisite link to her absences.*

¶12 Mitigation of the penalty is warranted when, as the administrative judge found here, the medical evidence corroborates the appellant's testimony that her mental illness, in this case, cognitive issues caused by depression, anxiety, and amnesia, played a role in her absence. ID at 27-28; *Bowman*, 122 M.S.P.R. 217,

¶ 14; *see Wynne v. Department of Veterans Affairs*, [75 M.S.P.R. 127](), 136 (1997) (finding that alleged stressful events did not constitute a mitigating factor when the appellant failed to show how his misconduct was directly related to these events).

¶13     The agency contends that the appellant's post-removal medical evidence failed to provide a link to the relevant period, i.e, the period that led to the adverse action being taken, and instead shows that she improved after she was removed.  PFR File, Tab 1 at 15-16; *see Bowman*, [122 M.S.P.R. 217](), ¶ 14 (where proximity in time, testimony, or other evidence provides the requisite link to the relevant period, the subsequent medical evidence can be very probative of a prior medical condition).  We disagree.  The appellant's post-removal medical evidence consists of progress notes from her Speech Pathologist's treatment of the appellant over six appointments between September 27 and October 30, 2018.  IAF, Tab 27 at 4-8, Tab 28 at 4-11.  Those dates include one appointment while she was still employed by the agency, as the agency effected the appellant's removal on September 30, 2018.  IAF, Tab 4 at 8, Tab 27 at 4-5.  The remainder of those appointments took place within the month immediately following the appellant's removal.  IAF, Tab 27 at 6-8, Tab 28 at 4-11.  The provider's September 27, 2018 progress note describes the chronology of the appellant's difficulties, which the appellant reportedly first noticed while she was still at work, and specifically states that the appellant had been out since May 2018, "due to her changes in cognition," and that she continued to have memory and problem-solving issues.  IAF, Tab 27 at 4.  The September 27, 2018 note also states that the appellant's "cognitive linguistic skills [were] making steady gains," and that the appellant was "showing readiness for vocational activities," which the provider found was "a marked improvement since her initial exam," on August 9, 2018.  *Id.* at 4-5.  Thus, the evidence overlaps with the appellant's removal, and it addresses the appellant's mental condition in the period covered by the AWOL charge.  *Id.*; IAF, Tab 4 at 39-43.

¶14 In this regard, the administrative judge found that the appellant's testimony and the medical documentation in the record both supported the conclusion that her absences were related to certain underlying medical conditions, including depression, anxiety, and amnesia—conditions that were exacerbated by grief over the death of her mother in November 2017 and the stress caused by having to move and care for her elderly father. ID at 27; IAF, Tab 27 at 4-8, Tab 28 at 4-10. The agency has not provided a basis for disturbing the administrative judge's decision to credit the appellant's testimony. The administrative judge held a hearing, and the Board must give deference to an administrative judge's credibility determinations when they are based, explicitly or implicitly, on the observation of the demeanor of witnesses testifying at a hearing; the Board may overturn such determinations only when it has "sufficiently sound" reasons for doing so. *Haebe v. Department of Justice*, 288 F.3d 1288, 1301 (Fed. Cir. 2002).

¶15 The agency also argues on review that the administrative judge gave the appellant's post-removal evidence too much weight. PFR File, Tab 1 at 15. The agency rightly observes that *Norris*, 675 F.3d 1349, does not specify the weight to be given to post-removal mitigating evidence. However, the agency has failed to show that the administrative judge improperly weighed the relevant post-removal medical evidence. In assessing the probative value of medical evidence, one must consider the qualifications of the health care providers, their familiarity with the appellant's condition, and whether their opinions provide a reasoned explanation for their findings as opposed to mere conclusory assertions. *See Stevens v. Department of the Army*, 73 M.S.P.R. 619, 627 (1997).

¶16 Here, the medical provider's opinions set forth reasoned and specific explanations of the appellant's medical conditions. IAF, Tab 27 at 4-8, Tab 28 at 4-11. Although the agency argues that the evidence in this case is effectively meaningless because the medical provider told the agency that the appellant was able to return to work prior to her being removed, PFR File, Tab 1 at 15, we do not discern any inconsistencies in the medical provider's opinions. Specifically,

the provider's prognosis that the appellant could attempt a soft transition to work earlier does not mean that she was incorrect that the appellant had progressed to the point that she was ready to return to work when the medical provider discharged the appellant on October 30, 2018.  IAF, Tab 4 at 12-14, Tab 27 at 4-8, Tab 28 at 4-11.

¶17    The agency also questions the qualifications of the medical provider, a Speech Pathologist, to give advice on the appellant's "generalized anxiety disorder" and "other amnesia."  PFR File, Tab 1 at 15.  However, the record does not reflect that the agency challenged or objected to the provider's qualifications below, and its unsupported challenge on review provides no substantive reason to discount the Speech Pathologist's assessment and diagnosis of the appellant.  *See Clay v. Department of the Army*, 123 M.S.P.R. 245, ¶ 6 (2016) (stating that the Board generally will not consider an argument raised for the first time in a petition for review absent a showing that it is based on new and material evidence not previously available despite the party's due diligence).  Moreover, the record reflects that the appellant's neurologist, who had diagnosed the appellant with amnesia and was, with the assistance of a nurse practitioner, treating her for the condition, had referred her to the Speech Pathologist for treatment.  IAF, Tab 4 at 12-14, Tab 21 at 121, Tab 30 at 17.  The record reflects that the Speech Pathologist was treating the appellant for, among other things, memory loss, which the administrative judge found was related to her absences.  ID at 5, 9, 27; IAF, Tab 4 at 12-14, Tab 27 at 4-8, Tab 28 at 4-11.

¶18    Based on the foregoing, we discern no basis for disturbing the administrative judge's finding that the provider's findings, as set forth in the appellant's post-removal medical documentation and the appellant's testimony before him, both supported the conclusion that her absences were related to her underlying medical conditions and that her impairment could be remedied or controlled.  ID at 27-28; IAF, Tab 27 at 4-12.

> *The administrative judge correctly considered the appellant's potential for rehabilitation based on her post-removal medical evidence.*

¶19    We similarly find unpersuasive the agency's argument on review that the deciding official correctly determined that the appellant's potential for rehabilitation was poor because she was likely to continue being AWOL. PFR File, Tab 1 at 13-15. The agency contends in its petition for review that the deciding official's testimony that the appellant failed to submit justification to excuse her absences did not indicate that he was unaware of her condition, and that he carefully considered it in considering the reasonableness of the penalty and her potential for rehabilitation. *Id.* at 12-13; *see Mingledough*, 88 M.S.P.R. 452, ¶ 12 (finding that a medical condition was not a significant mitigating factor when the potential for rehabilitation was poor).

¶20    However, the agency's finding that the appellant's potential for rehabilitation was poor was based on the evidence, including the medical documentation, that it had at the time of the appellant's removal. We have already determined that the administrative judge correctly reviewed the penalty based on the appellant's post-removal medical evidence—evidence the deciding official could not have had when he made his decision to remove the appellant. *Norris*, 675 F.3d at 1357 (finding that an arbitrator erred by stating that the issue before him was whether the penalty was within the tolerable limits of reasonableness based upon the facts and circumstances known to the deciding official at the time). Thus, by necessity, the appellant's recovery from mental conditions that were implicated in her AWOL similarly justifies the reassessment of a determination that the appellant's potential for rehabilitation was poor because her absence appeared open-ended. *Id.*

¶21    Concerning other penalty factors, the agency argues that, by raising the appellant's 28 years of discipline-free Federal service, the administrative judge appeared to "give the factor more weight than it was given by the deciding

official." PFR File, Tab 1 at 13. We are not persuaded. In conducting his penalty analysis, the administrative judge was required to determine whether the penalty was within the parameters of reasonableness. *Payne*, 72 M.S.P.R. at 650 (finding that when all of the agency's charges are sustained, but some of the underlying specifications are not sustained, the agency's penalty determination is entitled to deference, and should be reviewed only to determine whether it is within the parameters of reasonableness). The appellant's length of service is a pertinent part of that analysis, as is the fact that her service was discipline-free. *Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 305 (1981).

<u>The appellant does not challenge the administrative judge's findings that she failed to establish that the agency denied her due process or discriminated against her on the basis of her disability.</u>

¶22 As noted above, the administrative judge found that the appellant failed to prove that the agency denied her due process by considering ex parte information. ID at 18-22. He found that the appellant established that the proposing official and the deciding official engaged in ex parte communications after the appellant responded to the notice of proposed removal. ID at 20. Nevertheless, he found that the appellant failed to establish that the ex parte information involved, which included correspondence between the proposing official and the appellant, and a conversation between the proposing official and the deciding official to go through all the documents relevant to the case, was so substantial and so likely to cause prejudice as to rise to the level of a due process violation. ID at 21; *see Stone v. Federal Deposit Insurance Corporation*, 179 F.3d 1368, 1377 (Fed. Cir. 1999) (finding that "[o]nly *ex parte* communications that introduce new and material information to the deciding official will violate the due process guarantee of notice"). The appellant does not challenge this finding on review and we discern no reason to disturb it.

¶23 The administrative judge also found that the appellant failed to show that the agency discriminated against her on the basis of her disability. ID at 25-26.

He found that she established that she suffered from a disability, as the medical documentation she submitted indicated that she suffered from depression, anxiety, and amnesia, and that those conditions affected her attention, memory, and ability to concentrate. ID at 25. Nevertheless, because the appellant's medical documentation at that time did not suggest that she needed an extended leave of absence, and instead suggested that she should return to work, he determined that, even if the appellant's request for time off constituted a request for a reasonable accommodation, her medical documentation did not support her request. ID at 25-26. Thus, he found that the appellant failed to show that the agency denied her a reasonable accommodation. ID at 26; *see Bond v. Department of Energy*, 82 M.S.P.R. 534, ¶ 23 (1999) (observing that the Board has found open-ended latitude in leave and attendance matters constitutes an unduly burdensome accommodation); *Stevens*, 73 M.S.P.R. at 628-29 (same). The appellant does not challenge this finding on review and we discern no reason to disturb it.

¶24     Accordingly, we affirm the initial decision.

## ORDER

¶25     We ORDER the agency to cancel the removal and substitute in its place a 30-day suspension without pay. *See Kerr v. National Endowment for the Arts*, 726 F.2d 730 (Fed. Cir. 1984). The agency must complete this action no later than 20 days after the date of this decision.

¶26     We also ORDER the agency to pay the appellant the correct amount of back pay, interest on back pay, and other benefits under the Office of Personnel Management's regulations, no later than 60 calendar days after the date of this decision. We ORDER the appellant to cooperate in good faith in the agency's efforts to calculate the amount of back pay, interest, and benefits due, and to provide all necessary information the agency requests to help it carry out the Board's Order. If there is a dispute about the amount of back pay, interest due,

and/or other benefits, we ORDER the agency to pay the appellant the undisputed amount no later than 60 calendar days after the date of this decision.

¶27 We further ORDER the agency to tell the appellant promptly in writing when it believes it has fully carried out the Board's Order and of the actions it has taken to carry out the Board's Order. The appellant, if not notified, should ask the agency about its progress. *See* 5 C.F.R. § 1201.181(b).

¶28 No later than 30 days after the agency tells the appellant that it has fully carried out the Board's Order, the appellant may file a petition for enforcement with the office that issued the initial decision on this appeal if the appellant believes that the agency did not fully carry out the Board's Order. The petition should contain specific reasons why the appellant believes that the agency has not fully carried out the Board's Order, and should include the dates and results of any communications with the agency. 5 C.F.R. § 1201.182(a).

¶29 For agencies whose payroll is administered by either the National Finance Center of the Department of Agriculture (NFC) or the Defense Finance and Accounting Service (DFAS), two lists of the information and documentation necessary to process payments and adjustments resulting from a Board decision are attached. The agency is ORDERED to timely provide DFAS or NFC with all documentation necessary to process payments and adjustments resulting from the Board's decision in accordance with the attached lists so that payment can be made within the 60-day period set forth above.

**NOTICE TO THE APPELLANT REGARDING
YOUR RIGHT TO REQUEST
ATTORNEY FEES AND COSTS**

You may be entitled to be paid by the agency for your reasonable attorney fees and costs. To be paid, you must meet the requirements set forth at Title 5 of the United States Code (5 U.S.C.), sections 7701(g), 1221(g), or 1214(g). The regulations may be found at 5 C.F.R. §§ 1201.201, 1201.202, and 1201.203. If you believe you meet these requirements, you must file a motion for attorney fees

and costs WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION. You must file your motion for attorney fees and costs with the office that issued the initial decision on your appeal.

## NOTICE OF APPEAL RIGHTS[4]

You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(A).

---

[4] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**.  This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination.  If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision.  5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision.  If the action involves a claim of discrimination based on

race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** after your representative receives this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C.  20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C.  20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**. This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or

other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[5] The court of appeals must <u>receive</u> your petition for review within **60 days** of <u>the date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

> U.S. Court of Appeals
> for the Federal Circuit
> 717 Madison Place, N.W.
> Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The

---

[5] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

FOR THE BOARD:                              /s/ for

                                           Jennifer Everling
                                           Acting Clerk of the Board
Washington, D.C.



**DEFENSE FINANCE AND ACCOUNTING SERVICE
Civilian Pay Operations**

# DFAS BACK PAY CHECKLIST

The following documentation is required by DFAS Civilian Pay to compute and pay back pay pursuant to 5 CFR § 550.805.  Human resources/local payroll offices should use the following checklist to ensure a request for payment of back pay is complete.  Missing documentation may substantially delay the processing of a back pay award.  **More information may be found at: https://wss.apan.org/public/DFASPayroll/Back%20Pay%20Process/Forms/AllItems.aspx.**

**NOTE:  Attorneys' fees or other non-wage payments (such as damages) are paid by vendor pay, not DFAS Civilian Pay.**

☐  1) Submit a **"SETTLEMENT INQUIRY - Submission"** Remedy Ticket.  Please identify the specific dates of the back pay period within the ticket comments.

Attach the following documentation to the Remedy Ticket, or provide a statement in the ticket comments as to why the documentation is not applicable:

☐  2) Settlement agreement, administrative determination, arbitrator award, or order.

☐  3) Signed and completed "Employee Statement Relative to Back Pay".

☐  4) All required SF50s (new, corrected, or canceled).  **\*\*\*Do not process online SF50s until notified to do so by DFAS Civilian Pay.\*\*\***

☐  5) Certified timecards/corrected timecards.  **\*\*\*Do not process online timecards until notified to do so by DFAS Civilian Pay.\*\*\***

☐  6) All relevant benefit election forms (e.g. TSP, FEHB, etc.).

☐  7) Outside earnings documentation.  Include record of all amounts earned by the employee in a job undertaken during the back pay period to replace federal employment.  Documentation includes W-2 or 1099 statements, payroll documents/records, etc.  Also, include record of any unemployment earning statements, workers' compensation, CSRS/FERS retirement annuity payments, refunds of CSRS/FERS employee premiums, or severance pay received by the employee upon separation.

**Lump Sum Leave Payment Debts:**  When a separation is later reversed, there is no authority under 5 U.S.C. § 5551 for the reinstated employee to keep the lump sum annual leave payment they may have received.  The payroll office must collect the debt from the back pay award.  The annual leave will be restored to the employee.  Annual leave that exceeds the annual leave ceiling will be restored to a separate leave account pursuant to 5 CFR § 550.805(g).



## NATIONAL FINANCE CENTER CHECKLIST FOR BACK PAY CASES

Below is the information/documentation required by National Finance Center to process payments/adjustments agreed on in Back Pay Cases (settlements, restorations) or as ordered by the Merit Systems Protection Board, EEOC, and courts**.**

1. Initiate and submit AD-343 (Payroll/Action Request) with clear and concise information describing what to do in accordance with decision.

2. The following information must be included on AD-343 for Restoration:

    a. Employee name and social security number.
    b. Detailed explanation of request.
    c. Valid agency accounting.
    d. Authorized signature (Table 63).
    e. If interest is to be included.
    f. Check mailing address.
    g. Indicate if case is prior to conversion.  Computations must be attached.
    h. Indicate the amount of Severance and Lump Sum Annual Leave Payment to be collected (if applicable).

Attachments to AD-343

1. Provide pay entitlement to include Overtime, Night Differential, Shift Premium, Sunday Premium, etc. with number of hours and dates for each entitlement (if applicable).
2. Copies of SF-50s (Personnel Actions) or list of salary adjustments/changes and amounts.
3. Outside earnings documentation statement from agency.
4. If employee received retirement annuity or unemployment, provide amount and address to return monies.
5. Provide forms for FEGLI, FEHBA, or TSP deductions. (if applicable)
6. If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.
7. If employee retires at end of Restoration Period, provide hours of Lump Sum Annual Leave to be paid.

NOTE:  If prior to conversion, agency must attach Computation Worksheet by Pay Period and required data in 1-7 above.

The following information must be included on AD-343 for Settlement Cases:  (Lump Sum Payment, Correction to Promotion, Wage Grade Increase, FLSA, etc.)

    a. Must provide same data as in 2, a-g above.
    b. Prior to conversion computation must be provided.
    c. Lump Sum amount of Settlement, and if taxable or non-taxable.

If you have any questions or require clarification on the above, please contact NFC's Payroll/Personnel Operations at 504-255-4630.